IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **SHOOTER POPS LLC D/B/A CLAFFEY'S FROZEN COCKTAILS,** | : : : | |
| *Plaintiff,* | : | CIVIL ACTION |
| v. | : : | No. 22-4630 |
| **WELLS FARGO BANK, N.A.,** | : : | |
| *Defendant.* | : | |

MEMORANDUM

**KENNEY, J.**                                                                                          **January 05, 2023**

## I.     INTRODUCTION

In this suit, Plaintiff Shooter Pops LLC brings one claim against Defendant Wells Fargo Bank N.A. ("Wells Fargo") for negligence in their administration of a non-party's bank account. ECF No. 11 at 4-5. Before the Court is Defendant Wells Fargo's Motion to Dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). ECF No. 4. For the reasons set forth below, the Motion to Dismiss is granted.

## II.    BACKGROUND[1]

Shooter Pops, a company doing business as Claffey's Frozen Cocktails, alleges that Wells Fargo should be held liable for funds obtained fraudulently by a Wells Fargo customer and subsequently withdrawn from a Wells Fargo customer account. At some time not specified by

---

[1] The Court "accept[s] as true all allegations in plaintiff's complaint as well as all reasonable inferences that can be drawn from them, and [ ] construe[s] them in a light most favorable to the non-movant." *Tatis v. Allied Interstate, LLC*, 882 F.3d 422, 426 (3d Cir. 2018) (quoting *Sheridan v. NGK Metals Corp.*, 609 F.3d 239, 262 n.27 (3d Cir. 2010)). Except as noted, the Court draws the following facts from the Complaint and the attached exhibits. *See Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010) ("In deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint, matters of public record, [and] undisputedly authentic documents if the complaint's claims are based upon these documents.").

1

Plaintiff, Shooter Pops claims that it received two "spoofing emails"[2] that directed an employee in Plaintiff's accounting department to pay two invoices through wire transfers. ECF No. 11 ¶ 4. Plaintiff paid both invoices through two wire transfers from Plaintiff's Chase bank account to the alleged scammer's account at Wells Fargo. *Id*. ¶ 5. The amounts of each wire transfer were $147,240 on June 29, 2021 and $259,190 on July 7, 2021. *Id*. Following both transfers, on July 13, 2021, two employees in Wells Fargo's fraud department contacted Plaintiff to notify them that Wells Fargo conducted a fraud investigation. *Id*. ¶¶ 7-8. Defendant allegedly concluded that the funds from the two wire transfers were fraudulently obtained by the non-party account owner. *Id*. Wells Fargo allegedly informed Plaintiff of numerous prior withdrawals from the account and informed Plaintiff that the account currently held a balance of approximately $136,000. *Id*. ¶ 9. Plaintiff contends that the account was flagged by Wells Fargo after the fraudulent owner of the account fled a bank branch to avoid questioning. *Id*. ¶ 10. There is no date provided for when Wells Fargo initially flagged the account. Wells Fargo subsequently returned $94,755.96 to Plaintiff of the fraudulently obtained funds. *Id*. ¶ 11.

   Plaintiff argues, *inter alia*, that Wells Fargo was aware of potential fraud and chose to perform a fraud investigation yet failed to timely freeze the account and allowed the non-party owner of the account to withdraw additional funds of approximately $41,244. *Id*. ¶¶ 12-14. In their Motion to Dismiss, Wells Fargo argues that they owe no duty to noncustomers, like Plaintiff, and that there is no legal basis for negligence liability between a bank and a noncustomer under these circumstances. ECF No. 4-1. Plaintiff responds that Wells Fargo owed them a duty once the bank's investigation found fraud because the harm was foreseeable and that

---

[2] Plaintiff refers to spoofing emails as a form of cyber-attack in which a hacker sends an email that has been manipulated to seem as if it originated from a trusted source. ECF No. 11 at 2 fn. 1.

neither the Pennsylvania Bank Code Section 606 nor Article 4 of the Uniform Commercial Code apply to this claim. ECF No. 14.

### III. STANDARD OF REVIEW

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint. Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Zuber v. Boscov's*, 871 F.3d 255, 258 (3d Cir. 2017) (quoting *Santiago v. Warminster Twp.*, 629 F.3d 121, 128 (3d Cir. 2010)) (internal quotation marks omitted). A claim has facial plausibility when the plaintiff pleads factual content that allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court accepts as true the factual allegations contained in the complaint but disregards rote recitals of the elements of a cause of action, legal conclusions, and conclusory statements. *James v. City of Wilkes-Barre*, 700 F.3d 675, 679 (3d Cir. 2012). The Court will grant a motion to dismiss if the factual allegations do not "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

The Third Circuit directs the Court to apply a three-step analysis on a 12(b)(6) motion. First, the Court must note the elements the plaintiff must plead to state a claim. *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (citing *Iqbal*, 556 U.S. at 675). Next, the Court identifies allegations that, because they are no more than conclusions, are not entitled to the assumption of truth. *Id*. Finally, the Court assumes the veracity of well-pleaded factual allegations and determines whether they plausibly give rise to an entitlement to relief. *Id*. In ruling on a motion to dismiss, the Court considers only "the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the

3

complainant's claims are based upon these documents." *Guidotti v. Legal Helpers Debt Resolution, LLC*, 716 F.3d 764, 772 (3d Cir. 2013).

**IV.   DISCUSSION**

1. <u>Article 4A of the Uniform Commercial Code</u>

Wells Fargo contends that Article 4A of the Uniform Commercial Code ("UCC"), which governs electronic funds transfers, preempts Shooter Pops' arguments that Wells Fargo owed any kind of obligation to the company. ECF No. 4-1 at 7-10. Plaintiff disagrees because Article 4 governs only the fund transfer itself, "not the conduct that occurs after the transferred funds are received and accepted." ECF No. 14 at 9 (citing 13 Pa. C.S.A. § 4A102). Plaintiff contends that its theory of negligence focuses on Defendant's failure to freeze the funds after the transfer was completed. *Id*. at 11.

Article 4A of the UCC applies to claims arising out of wire transfers. *United States v. PNC Bank*, 2009 WL 10736701 (E.D. Pa. Mar. 31, 2009); *DeFazio v. Wells Fargo Bank Nat'l Ass'n*, 2020 WL 1888252 (D.N.J. Apr. 16, 2020). Electronic fund transfers begin "with the originator's payment order" and are "completed by acceptance by the beneficiary's bank of a payment order for the benefit of the beneficiary of the originator's payment order." 13 Pa. C.S. § 4A104(a).

Plaintiff's claim of negligence is premised only on the subsequent withdrawal of the funds from the fraudulent account during a time when Plaintiff believes Wells Fargo should have frozen the account. Plaintiff states that it is not claiming that Wells Fargo is liable for the fraudulent wire transfer itself, only that a duty was created and owed once Wells Fargo conducted its investigation and concluded the transfers were fraudulent.

Furthermore, Plaintiff is not attempting to hold Wells Fargo liable for the fraudulent transfers, as evidenced by the damages being claimed, which are only a portion of the total amount sent via wire transfer. Therefore, any claim of negligence premised on the withdrawal of funds due to Wells Fargo's failure to keep the funds frozen occurred after the wire funds transactions were complete and Plaintiff's claims are not preempted by Article 4A of the UCC.

2. <u>Pennsylvania Banking Code 7 P.S. § 606</u>

Wells Fargo also asserts that, even if Plaintiff's claim is based on "post transfer" conduct, it is wholly barred by Section 606 of the Pennsylvania Banking Code. Plaintiff contends that the statute does not apply to this controversy because Plaintiff does not contend that they had "superior rights" to the account, only that Defendant negligently failed to freeze or otherwise safeguard the funds after Wells Fargo concluded that the funds held in the account were obtained by fraud. ECF No. 14 at 9.

This statute states in relevant part:

> (a) An institution shall not be required, in the absence of a court order or indemnity required by this section, to recognize any claim to, or any claim of authority to exercise control over, a deposit account […] made by a person or persons other than: (i) the customer in whose name the account or property is held by the institution, or (ii) an individual or group of individuals who are authorized to draw on or control the account or property pursuant to a certified corporate resolution or other written arrangement with the customer, currently on file with the institution […] (b) To require an institution to recognize an adverse claim to, or adverse claim of authority to control, a deposit account […] whoever makes the claim must either: (i) obtain and serve on the institution an appropriate order directed to the institution by a court restraining any action with respect to the account or property […] or (ii) deliver to the institution a bond, in form and amount and with sureties satisfactory to the institution, indemnifying the institution against any liability, loss or expense which it might incur because of its recognition of the adverse claim or because of its refusal by reason of such claim to honor any check or other order of, or to deliver any property to, anyone described in clauses (i) and (ii) of subsection (a)[.]

7 P.S. § 606 (a)-(b).

The Court agrees with Wells Fargo that Section 606 requires a party to obtain and serve on the bank a court order instructing the bank to freeze the funds and mandating that the funds be treated as within the control of the third party instead of the account holder. ECF No. 4-1 at 7. Wells Fargo points to *E.F. Houghton & Co. v. Doe*, wherein the Superior Court decided the "nature of the notice that must be given to a bank by a third party under Section 606 of the Banking Code in order for the third party to assert successfully a claim to funds in a depositor's account superior to that of the depositor or the bank itself." 427 Pa. Super. 303, 304, 628 A.2d 1172 (1993). In that case, the bank refused to freeze the funds before receiving a court order and the Superior Court affirmed that the bank was not required to recognize the third party's adverse claim to the funds without the third party satisfying the requirements of Section 606. *See E.F. Houghton*, 427 Pa. Super. at 307, 310 ("The law provides that a bank which recognizes an alleged 'adverse claim' to actual ownership of the account where no order or bond has been served does so at its own risk."). "Section 606 clearly and unambiguously defines the type of notice that is effective to prevent set off or other action by the bank." *Id*. at 310. "Where such an adverse claim is made, the Banking Code requires that the claimant provide something more than mere 'notice' of the claim; a letter purporting to advise the bank of the alleged claim is not sufficient under the statute." *Id*.

Here, Plaintiff, a noncustomer, similarly alleges that Wells Fargo mishandled the funds once it was aware that the funds were fraudulently obtained. Once Wells Fargo became aware of the fraud, Wells Fargo proactively notified Plaintiff of their concerns regarding fraud, though they had no obligation to do so. Plaintiff then assumed Wells Fargo would freeze the funds in its customer's account instantly. According to Section 606, the notification of fraud does not necessitate that Wells Fargo instantly freeze the account. It is apparent from the fact that Wells

6

Fargo returned a substantial amount of the funds that they elected to safeguard most of the remaining funds for the noncustomer's benefit as soon as practicable. Wells Fargo should not be penalized for providing that to Plaintiff without a court order. More importantly, Plaintiff misunderstands that the Pennsylvania Banking Code prevents Wells Fargo from being held liable for its inaction or delayed action. Because Plaintiff did not satisfy the statutory requirements to mandate Wells Fargo's response to fraud, it cannot now hold Wells Fargo liable for its allegedly delayed response. Thus, Wells Fargo was not obligated to instantly take action after becoming aware of fraud and cannot be held liable for that inaction.

3. <u>Duty of Care</u>

The Court will now address whether Plaintiff has pled sufficient facts to support a plausible claim of negligence against Wells Fargo based on the premise that Wells Fargo affirmatively created a duty of care by conducting its own fraud investigation. Under Pennsylvania common law, "[i]t is axiomatic that in order to maintain a negligence action, the plaintiff must show that the defendant had a duty to conform to a certain standard of conduct; that the defendant breached that duty; that such breach caused the injury in question; and actual loss or damage." *Wisniski v. Brown & Brown Ins. Co.*, 906 A.2d 571, 575-76 (Pa. Super. Ct. 2006) (quoting *Phillips v. Cricket Lighters*, 841 A.2d 1000, 1008 (Pa. 2003)). "The question of whether a duty exists is a question of law for the court to decide." *Fragale v. Wells Fargo Bank, N.A.*, 480 F. Supp. 3d 653, 661 (E.D. Pa. Aug. 19, 2020).

Plaintiff is not a customer of Wells Fargo, yet Plaintiff alleges that Wells Fargo owed a duty of care because Wells Fargo notified Plaintiff of alleged fraud and Plaintiff assumed Wells Fargo would instantly freeze the account. Creating such a duty of care under these circumstances would deter banks from conducting their own fraud investigations and informing third parties of

their findings to prevent future fraud both practices benefiting noncustomers. Plaintiff contends that under the Restatement of Torts Section 302(b), Wells Fargo owed a common law duty to Plaintiff because the bank had actual knowledge from its own investigation of fraud. ECF No. 14 at 6.

Plaintiff fails to plead that a bank owes any common law duties to noncustomers under the Restatement of Torts. There is a substantial lack of precedent acknowledging a bank's obligation or duty to noncustomers. Quite the opposite, precedent supports the principle that banks do not owe any duty of care to noncustomers and/or third parties. *See e.g.*, *Adkins v. Sogliuzzo*, 625 F. App'x 565, 569 (3d Cir. 2015) ("Absent a special relationship, courts will typically bar claims of noncustomers against banks.") (internal citation omitted); *Fragale*, 480 F.Supp.3d at 661 ("[D]ecisions across the country, including within Pennsylvania, have held that banks do not owe any duty of care to noncustomers and/or third parties."); *Eisenberg v. Wachovia Bank N.A.*, 301 F.3d 220, 225 (4th Cir. 2002) ("Courts in numerous jurisdictions have held that a bank does not owe a duty of care to a noncustomer with whom the bank has no direct relationship.") (collecting cases); *Commerce Bank v. First Union Nat'l Bank*, 911 A.2d 133, 139 (Pa. Super. Ct. 2006) (holding a bank does not have a duty to take action against a client's bank account when the bank suspects fraud, in order to protect a third-party bank from future similar fraudulent conduct).[3]

Furthermore, Wells Fargo did not have a duty of care towards Plaintiff under the *Althaus* test. In *Althaus*, the Pennsylvania Supreme Court "established a five-factor policy test for courts

---

[3] Plaintiff attempts to distinguish each of these cases from the present circumstances, which is not persuasive to the Court. ECF No. 14 at 5-8. Plaintiff focuses narrowly on the foreseeability in this case because Wells Fargo had conducted its own investigation and found fraud. Aside from the perverse incentives such a liability framework would create for financial institutions, Plaintiff does not convince the Court that simply flagging an account or notifying a noncustomer of a fraud investigation creates an affirmative duty of care between a bank and a noncustomer.

to apply when considering whether a particular set of facts warrants imposing a duty where such a duty was not previously recognized." *Fragale*, 480 F.Supp.3d at 664. These factors are: "(1) the relationship between the parties; (2) the social utility of the actor's conduct; (3) the nature of the risk imposed and foreseeability of the harm incurred; (4) the consequences of imposing a duty upon the actor; and (5) the overall public interest in the proposed solution." *Althaus ex rel. Althaus v. Cohen*, 756 A.2d 1166, 1169 (Pa. 2000).

      First, Wells Fargo did not have a relationship with Plaintiff. "[M]ere knowledge of a dangerous situation, even by one who has the ability to intervene, is not sufficient to create a duty to act." *Fragale*, 480 F.Supp.3d at 665 (internal citation omitted); *Feld v. Merriam*, 485 A.2d 742, 746 (Pa. 1984) ("[T]here is a general rule against holding a person liable for the criminal conduct of another absent a preexisting duty."). The promise to intervene, later withdrawn, does not create a relationship where one did not exist prior. "The fact that the actor realizes that action on his part is necessary for another's aid or protection does not of itself impose upon him a duty to take such action[.]" *Walters v. UPMC Presbyterian Shadyside*, 187 A.3d 214, 233 (Pa. 2018) (quoting Restatement (Second) of Torts § 314 when assessing the first *Althaus* factor). Plaintiff fails to plead that Wells Fargo otherwise had some special relationship to it that would create a duty. *See Fink v. Corp. Liaison, LLC*, 2013 WL 1742474, at *4 (E.D. Pa. Apr. 23, 2013) (finding no special relationship where plaintiffs loaned funds to bank customer who used fraudulent bank letter of credit to obtain funds, even though the transaction occurred on bank's financial metaphorical platform, and rejecting claim that bank acquired a duty when it learned of the fraud committed by others). Even drawing all reasonable inferences in favor of Plaintiff, none of the facts alleged show that Wells Fargo had any kind of relationship with Plaintiff from which any such recognized or recognizable duty would arise. *Id*. The lack of

relationship between Wells Fargo and Plaintiff is a "significant factor that weighs against the existence of a duty." *Citizens Bank of Pennsylvania v. Reimbursement Technologies, Inc.*, 609 F. App'x 88, 92 (3d Cir. 2015).

Second, the social utility of imposing a duty here would be mixed. There is social utility in requiring banks to be proactive to address fraud by its own customers, and it could deter fraud if the funds are likely to be frozen quickly. However, imposing such a duty would also likely deter banks from conducting fraud investigations on their customers. If notifying a noncustomer about a fraud investigation creates a binding obligation, banks are far less likely to conduct such an investigation and freeze funds. Creating this duty would open banks to liability both from the customer, who may or may not have obtained the funds fraudulently and is entitled to those funds absent a court order, and a noncustomer who presumes the funds were frozen instantly. This factor, at best, leans against establishing a duty.

As to the fourth factor, evaluating the consequences of imposing a duty on the actor, this could impose broad liability on banks to noncustomers and create the perverse incentive for banks to take no action at all. Such a liability framework could negatively impact the contractual relationship a bank has with its customers, which is paramount to the proper functioning of the institution and the services it offers. If banks are pressured to freeze funds instantly when they are flagged for suspicious activity, it affects the bank's ability to maintain its contractual obligations to its customers. Establishing this obligation "would inevitably force banks to… restrict the[ir] clients' accounts on the least degree of suspicion, thereby alienating their customers, in order to avoid unspecified liability." *Fragale*, 480 F. Supp. 3d at 667 (internal citation omitted). It also opens the door to litigation of a fraudulent transfer in which a plaintiff alleges that the bank notified them of fraud, thereby opening the door to discovery and juries

being called upon to determine this material fact. "This would have a significant impact on the banking industry, one in which the Pennsylvania legislature addressed by making it clear of the limited, yet well-defined ways, to freeze an account suspected of fraud." *Chemalloy Co., LLC v. Citibank, N.A.*, 2022 WL 2356776, at *6 (E.D. Pa. June 30, 2022).

Similar to this Court's decision in *Chemalloy*, Plaintiff was in the best position to prevent the harm in the first place, before funds ever left the company, by simply confirming the invoice was accurate or by obtaining a court order mandating that Wells Fargo freeze the funds. Plaintiff made no apparent effort to verify the invoices or the recipient and took no immediate action to preserve the fraudulently obtained funds once the company became aware of fraud. Thus, this factor weighs against creating a duty to noncustomers.

The third factor weighs slightly in favor of a duty. The bank conducted its own fraud investigation and concluded the funds were obtained fraudulently. It was foreseeable at that point that fraudulently obtained funds could be withdrawn from the bank account if not frozen. It was fortunate that Plaintiff was able to recover a substantial amount of funds despite the bank account owner's frequent withdrawal. However, economic loss "does not compare to other non-monetary risks such as loss of human life or physical harm," and there is no allegation that this fraud scheme extended beyond these two invoices. *Fragale*, 480 F. Supp. 3d at 666. Plaintiff only received two fraudulent requests for funds and the amount lost following the notification of fraud was a fraction of the amount fraudulently obtained.

Finally, the public has an interest in both preventing fraudulently obtained funds from being withdrawn and an interest in being able to access funds from their own bank account absent a court order. If the noncustomer confirms its own invoices and, if that fails, obtains a court order to safeguard the funds, both the noncustomer's interest in the funds and the bank's

obligation to its customers are protected. Since there is already recourse for Plaintiff to prevent fraud, it does not further serve the public interest to create new duties between a bank and noncustomer.

Therefore, without a duty of care to Plaintiff, Wells Fargo cannot be held liable under a negligence theory.

V.     **CONCLUSION**

For the foregoing reasons, this Court grants Wells Fargo's Motion to Dismiss and the case is dismissed with prejudice.

**BY THE COURT:**

/s/ Chad F. Kenney
**CHAD F. KENNEY, JUDGE**